```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MARVIN AMES, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 05-4429 (JBS) |
| v. | **OPINION** |
| UNITED STATES POSTAL SERVICE, | |
| Defendant. | |

APPEARANCES:

Mr. Marvin Ames
11 Harrowgate Drive
Cherry Hill, New Jersey 08003
    Plaintiff Pro Se

CHRISTOPHER J. CHRISTIE
United States Attorney
    By:  Paul A. Blaine
         Assistant United States Attorney
4th & Market Streets, Fourth Floor
Camden, New Jersey 08101
    Attorneys for Defendant United States Postal Service

**SIMANDLE**, U.S. District Judge:

Plaintiff pro se, Marvin Ames, filed this "straight-forward breach of contract case" (Pl. Opp. Br. at 4) against the U.S. Postal Service on August 5, 2005, seeking indemnification for a pair of earrings lost in the mail en route to French Polynesia on January 26, 2004.[1] The matter is currently before the Court upon the motion for summary judgment by Defendant United States Postal

---

[1] Plaintiff filed this action pro se in the Superior Court of New Jersey on August 5, 2005.  Defendant removed the action to this Court on September 12, 2005, pursuant to 28 U.S.C. §§ 1441, 1442(a) and 2679(d)(2).

Service ("Defendant" or "USPS").  Because the explicit terms of the contract between Mr. Ames and Defendant denies insurance coverage for jewelry sent to French Polynesia, Plaintiff's breach of contract claim must be denied as a matter of law and Defendant's motion will be granted.[2]

I.   **BACKGROUND**

Although the record does not indicate when, it is undisputed that at some time prior to January 13, 2004, Plaintiff purchased a pair of Tahitian cultured pearl earrings from the Polynesian Office of Expertise and Commercialization of Tahiti Cultured Pearls in Bora-Bora.  Apparently, though, Mr. Ames was not satisfied with his purchase and complained, via a series of letters and e-mails, to OPEC.  In response, Pierre Lérigé, General Manager of OPEC, advised Plaintiff to return the earrings to OPEC in French Polynesia, at which time his bank account would be credited the full purchase price.  On January 26, 2004, several days after Mr. Ames received OPEC's response, Plaintiff went to the United States Post Office in Cherry Hill, New Jersey to mail the earrings.

According to Plaintiff, the postal clerk advised him, after consulting the U.S. Postal Service's International Mail Manual

---

[2] The motion is captioned as a motion to dismiss, or alternatively, for summary judgment.  The Court will treat the motion as a motion for summary judgment under Rule 56, Fed. R. Civ. P., because both parties have submitted materials outside the pleadings which the Court has considered.

("IMM"), that the IMM prohibits the mailing of jewelry to French Polynesia.[3] The postal clerk was correct.  According to the IMM's Individual Country Listing for French Polynesia, precious stones and jewelry are nonmailable items.  IMM ¶ 131.32.  According to the relevant controlling provisions of the IMM, indemnity payments for insured nonmailable parcels will not be paid in the event of a claims loss.  IMM ¶ 932c.  The burden remains on the mailer to ensure compliance with international and individual country rules and regulations for mailability.  IMM ¶ 131.4.

Despite the foregoing, the postal clerk accepted Plaintiff's parcel for mailing and allowed him to purchase, for $12.60, $1015.00 worth of insurance coverage for the earrings.  According to Mr. Ames, the clerk informed Plaintiff that she accepted the package and permitted him to purchase the insurance coverage despite the IMM's explicit prohibition, because "the earrings were manufactured in French Polynesia and were being returned at the written request of the manufacturer."[4]  (Compl.; Pl. Opp. Br. at 5.)  The postal clerk then issued Mr. Ames an insured mail receipt for his parcel (# VE 199 553 901 US).  (Def. Ex. 2.)  The back of the receipt states:

---

[3] The IMM, available at http://pe.usps.gov, is incorporated by express reference at 39 C.F.R. §§ 20.1, 20.4 (2004).

[4] Defendant does not object to the Court's consideration of this unsworn oral statement allegedly made to Mr. Ames by the postal clerk.  (Govt. 10/20/05 ltr.)

3

> Insurance [for international shipments] is provided only in accordance with . . . the International Mail Manual (IMM). The . . . IMM set[s] forth the specific types of losses that are covered, the limitations on coverage, terms of insurance, and conditions of payment. Copies of the . . . IMM are available for inspection at any post office.

The parcel was mailed and later arrived to French Polynesia. The contents of the package, however, were absent.

Subsequently, on or about April 6, 2004, Mr. Ames submitted an indemnification claim to the USPS. By letter dated August 2, 2004, Plaintiff was notified that his claim was denied. The letter informed Plaintiff that the package he sent was prohibited by French Polynesia under the IMM. Then, on March 4, 2005, Plaintiff mailed a letter to the Postmaster General concerning the denial of coverage. By letter dated March 25, 2005, Margaret Falwell, USPS Program Manager, International Indemnity Claims, responded to Plaintiff's inquiry, explaining in detail the reasons for the denial of coverage.

On August 5, 2005, Plaintiff commenced this action pro se in Superior Court, New Jersey, seeking indemnification for the insured value of the earrings under a breach of contract theory. Defendant removed the action to this Court on September 12, 2005. On September 15, 2005, Defendant filed the instant motion.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[5] In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citations omitted).

**III. DISCUSSION**

This is a claim for breach of contract. (Compl.) The terms of the contract, incorporated by reference in the insured mail receipt, are unambiguous. They state that the mailing of jewelry to French Polynesia is prohibited and, thus, that indemnity

---

[5] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

5

payments for such insured nonmailable parcels will not be paid in the event of a claims loss. To resolve any doubt, Mr. Ames concedes that the postal clerk actually informed him "that the IMM prohibited the mailing of jewelry to French Polynesia . . . ." (Compl.) "Thus, Plaintiff was provided with information that there would be no indemnity for the type[] of article[] he wished to send. Defendant['s] refusal to pay on Plaintiff's claim is in accordance with the terms provided to Plaintiff upon mailing and, therefore, is not a breach of contract." Gildor v. U.S. Postal Service, 376 F. Supp. 2d 284, 289 (N.D.N.Y. 2005).

> [T]he [postal] clerk's oral statement was not a separate agreement, but purported to describe the USPS's undertaking. Whether is could have served to permit plaintiff to rescind because of mutual mistake is not at issue. By elementary application of the parol evidence rule, the unambiguous limitation in the writing could not be orally contradicted.

A.E. Alie & Sons, Inc. v. U.S. Postal Service, 897 F.2d 591, 593 (1st Cir. 1990). "Manifestly the postal clerk's contrary interpretation could not prevail over the instrument itself." Id. at 592. Accordingly, the Court holds that Plaintiff's breach of contract claim is without merit as a matter of law.

Additionally, to the extent Plaintiff argues that Defendant should be equitably estopped from denying coverage (in light of the postal clerk's oral representations and because she issued insurance coverage for the parcel) that argument too is without merit. The hallmarks of estoppel are reasonable reliance on a

misrepresentation of fact that induces the injured party to change his position for the worse.  S & H Hardware & Supply Co. v. Yellow Transport, Inc., 2005 U.S. App. LEXIS 28036, at *14 (3d Cir. Dec. 19, 2005) (precedential) (citing Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984)).  Here, Plaintiff's reliance on the postal clerk's oral representations was not reasonable and, thus, the Court will not apply estoppel against the USPS.[6]

In Gildor, 376 F. Supp. 2d 284, 289, the plaintiff asserted a breach of contract claim against the USPS arising out of the postal service's loss of a package containing gold rings.  At the time of delivery, the plaintiff inquired of the postal clerk whether the package could be insured if shipped by Global Express Mail to France.  The clerk advised him that it could, the plaintiff paid shipping and insurance fees, and the clerk accepted the package for delivery.  Contrary to the postal clerk's oral representations, though, the IMM expressly restricts

---

[6] Estoppel against the Government additionally requires proof of affirmative misconduct.  Fredericks v. Comm'r of Internal Revenue, 126 F.3d 433, 438 (3d Cir. 1997); Yang v. INS, 574 F.2d 171, 175 (3d Cir. 1978) (citing INS v. Hibi, 414 U.S. 5 (1973)).  Even if Plaintiff here could demonstrate reasonable reliance on the postal worker's oral representations, Plaintiff does not even attempt to, nor could he, make a showing of actual misconduct on the part of the Government.  See Gildor, 376 F. Supp. 2d at 291 (holding that without more, misstatements by USPS employees regarding indemnity restrictions, and failure of USPS computers to alert those employees of the same, constitutes negligence at best).  Thus, his estoppel argument must fail in any event.

indemnity on claims concerning the shipment of jewelry by Global Express Mail to France.  Ultimately, the package was returned empty to the plaintiff, who then filed a claim with the USPS for indemnity.  The USPS denied that claim, and the plaintiff filed a breach of contract action.

The court rejected the plaintiff's argument that the government should be equitably estopped from denying coverage because of the postal employee's misrepresentations concerning the availability of insurance coverage and because the notices containing the relevant IMM provisions were not visible on the plaintiff's delivery receipt.  In so doing, the court held as a matter of law that the plaintiff could not have reasonably relied on the postal clerk's misrepresentations.  "This is primarily because Plaintiff had the means by which, with reasonable diligence, he could have learned the restrictions of insurability.  Had Plaintiff read the reverse side of the Express Mail label, he would have learned that indemnity was not available for gold and jewelry notwithstanding any statements by Postal Service employees." Id. at 290-91 (citing A.E. Alie & Sons, 897 F.2d at 592-93).  Accordingly, the court rejected the plaintiff's estoppel argument and granted summary judgment in favor of the defendant on the plaintiff's breach of contract claim.

The facts of the instant case are even less favorable to Plaintiff than those in Gildor.  Here, unlike Gildor, Plaintiff had actual knowledge of the relevant IMM provisions denying the availability of coverage for jewelry shipped to French Polynesia. Indeed, as already noted, Plaintiff concedes that the postal clerk actually informed him "that the IMM prohibited the mailing of jewelry to French Polynesia . . . ."  (Compl.)  In light of that statement, Plaintiff could not have reasonably relied on the postal clerk's representation that insurance coverage would be available.

Similarly, in A.E. Alie & Sons, 897 F.2d 591, the court held that the plaintiff's reliance on two postal clerks' misstatements was not reasonable.  In that case, the plaintiff jeweler inquired of a postal clerk whether the shipment in one package of a number of pieces of jewelry, totaling $60,000 in value, could be insured.  According to the court, the reason for the plaintiff's doubt was the language on the registered mail receipt stating that the insurance limit was $25,000.  Despite that explicit limitation, though, the postal clerk assured the plaintiff that it could pay an additional fee to cover the full amount of the shipment.  The plaintiff accepted that representation and proceeded accordingly.

The package was lost, and the plaintiff filed a breach of contract claim against the USPS.  In upholding the grant of

9

summary judgment in favor of the USPS on that claim, the court "decline[d] to recognize the reasonableness of relying on the oral representation of a postal worker that a statement on an official receipt is meaningless." Id. at 593.  In so holding, the court rationalized:

> All estoppel, at a minimum, calls for reasonable reliance.  The USPS is an enterprise with, undoubtedly, thousands of postal clerks.  Such low-level employees must be known to have minimum authority.  If it could be found reasonable to think they had authority to expose the Service to unlimited obligations, as in this case, it would seem apparent that the Service could face bankruptcy.

Id. (citations omitted); see Federal Crop Ins. Co. v. Merrill, 332 U.S. 380, 384 (1947) ("Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. . . .  And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.")).

As in Gildor and A.E. Alie & Sons, Plaintiff's reliance on the postal clerk's representations in this case, especially in light of Plaintiff's actual knowledge of the IMM restrictions on coverage, are as a matter of law unreasonable.[7]  See also Moody v.

---

[7] In light of this conclusion, the Court need not examine whether there was misconduct on the part of the postal clerk in representing that insurance was available, processing payment therefor, and accepting the package for delivery.

United States, 783 F.2d 1244, 1247 (5th Cir. 1986) (holding no reasonable reliance by plaintiff where postal clerk failed to inform plaintiff of relevant restrictions on coverage); Persick v. U.S. Post Office, 2001 U.S. Dist. LEXIS 1938, at *8 (E.D.Pa. Feb. 23, 2001) (holding no reasonable reliance where postal employee failed to describe to plaintiff the limitations of liability that were clearly referenced on the Express Mail label).  But see Azar v. U.S. Postal Service, 777 F.2d 1265 (7th Cir. 1985) (upholding determination by district court that plaintiff could have reasonably relied on misrepresentations made by two postal employees regarding availability of insurance coverage where plaintiff was unable to read the relevant restrictions because he did not have his prescription glasses).  Accordingly, any estoppel claim must fail.[8]

---

[8] For the reasons explained, the Court finds that Plaintiff is not entitled to contractual relief.  Although not sought in the Complaint, however, the Court is hard-pressed to see any reason why Defendant should not voluntarily refund the insurance premium of $12.60 paid by Mr. Ames, since there was never a separate insurance contract between the parties.  See A.E. Alie & Sons, Inc., 897 F.2d at 593 (holding postal clerk's oral statement that insurance was available when, in fact, it was not, was "not a separate agreement, but purported to describe the USPS's undertaking")

**IV. CONCLUSION**

    For the foregoing reasons, the Court will grant summary judgment in favor of the U.S. Postal Service and the Complaint will be dismissed in its entirety.  The accompanying Order will be entered.


 **December 21, 2005**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          U.S. District Judge